**MINNESOTA MINING AND MANUFACTURING COMPANY,**
Plaintiff–Appellant,

v.

**CHEMQUE, INC. (formerly known as Chemque Canada, Ltd.) and Thomas & Betts Corporation,** Defendants–Cross Appellants.

Nos. 00–1429, 00–1517.

United States Court of Appeals,
Federal Circuit.

Decided: Aug. 30, 2002.

Rehearing and Rehearing En Banc Denied: Nov. 4, 2002.[*]

---

* Schall, Circuit Judge, did not participate in the vote.

Willem G. Schuurman, Vinson & Elkins L.L.P., of Austin, TX, argued for plaintiff-appellant. With him on the brief was David B. Weaver. Of counsel on the brief were Gerald F. Chernivec and Darla Fonseca, Minnesota Mining and Manufacturing Co., of Austin, TX. Also of counsel on the brief were Nicole W. Stafford and Michael C. Barrett, Fulbright & Jaworski L.L.P., of Austin, TX.

Robert F. Altherr, Jr., Banner & Witcoff, Ltd., of Washington, DC, argued for defendants-cross appellants. With him on the brief were Nina L. Medlock, John P. Iwanicki, and Bradley C. Wright. Of counsel was Patricia E. Hong. Of counsel on the brief was Thomas H. Watkins, Hilgers & Watkins, of Austin, TX.

Before, MAYER, Chief Judge, and GAJARSA and LINN, Circuit Judges.

Opinion for the court filed by Circuit Judge GAJARSA. Dissenting opinion filed by Chief Judge MAYER.

GAJARSA, Circuit Judge.

This is an appeal from the judgment issued by the United States District Court for the Western District of Texas pursuant to a jury verdict and the subsequent denial of several motions for judgment as a matter of law ("JMOL"). *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, A–98–CA–241 (W.D.Tex. May 16, 2000) (order entering judgment) ("Order"). Although two patents were at issue in this action, U.S. Patent No. 5,169,716 ("the '716 patent") and U.S. Patent No. 4,857,563 ("the '563 patent"), only issues relating to claims 1 and 9 of the '716 patent are on appeal before us. Plaintiff–Appellant, Minnesota Mining and Manufacturing Co. ("3M"), the assignee of the '716 and '563 patents, appeals only the denial by the district court of the JMOL that dependent claim 9 of the '716 patent is not anticipated and that defendant-cross-appellant Chemque, Inc. ("Chemque") induced infringement of claim 9. Defendants-cross-appellants Chemque and Thomas and Betts Corp. ("T&B"), (collectively "the defendants") brought a conditional cross-appeal challenging the jury's finding that dependent claim 9 was infringed. We reverse the district court's denial of judgment as a matter of law that claim 9 was infringed by inducement. In addition, we hold that the district court erred in denying judgment as a matter of law that claim 9 is not anticipated. Finally, we affirm the district court's claim construction. Therefore, we affirm-in-part, reverse-in-part, and remand to the district court for a determination of damages.

## BACKGROUND

The '716 patent teaches compositions of encapsulants used for protecting signal transmission devices, such as electrical or optical cables. The signal transmission device is encompassed in a mixture of the two parts that comprise the encapsulant: the anhydride functionalized compound and the cross-linking agent. When mixed, the cross-linking agent reacts with anhydride reactive sites on the anhydride functionalized compound to form a cross-linked polymer structure which is gel-like, thus protecting the signal transmission devices from contaminants.

3M brought suit against Chemque and T&B, for infringement of the '716 patent, and the defendants asserted patent invalidity as a defense. Only claims 1 and 9 of the '716 patent are relevant to this appeal. They recite:

1. A signal transmission component comprising:

 a) a signal transmission device; and

 b) a dielectric encapsulant which encapsulates said device, said encapsulant having a C–H adhesion value of at least 4.0 comprising:

 the extended reaction product of an admixture of:

 a) an effective amount of an anhydride functionalized compound having reactive anhydride sites; and

 b) an effective amount of a crosslinking agent which reacts with the anhydride sites of said compound to form a cured crosslinked material;

 said reaction product extended with at least one organic plasticizer present in the range of between 5 and 95 percent by weight of said encapsulant to form a plasticized system which is essentially inert to the reaction product and substantially non-exuding therefrom.

9. The component of claim 1 wherein said encapsulant has a Polycarbonate Compatibility Value of at least 80.

'716 Patent, col.19 ll. 36–54 and col. 20 ll. 9–11.

The district court conducted a Markman hearing to construe the claim terms. The court construed the term "effective amount" to mean "a sufficient amount of the specified component to form an encapsulant having the specified properties under the specified conditions, if any." *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, A–98–CA–241, slip op. at 6 (W.D.Tex. Jan. 19, 2000) ("*Claim Construction*"). The term "cross-linking agents" was construed as "a compound which reacts with anhydride sites on an anhydride functionalized compound to form a cross-linked polymer structure." *Id.*

The case was tried to a jury. Before the jury returned its verdict 3M made a motion for judgment as a matter of law on the defendant's invalidity defenses, which was denied. The jury returned a special verdict. It is summarized below:

| | Independent Claim 1 | Dependent Claim 9 |
| --- | --- | --- |
| Infringement | No | Yes |
| Contribution | No | No |
| Inducement | No | No |
| Anticipation | No | Yes |
| Obviousness | Yes | No |
| Indefiniteness | No | No |

Despite its finding of infringement of dependent claim 9, the jury awarded 3M no damages. The jury was not instructed as to the relationship between independent and dependent claims. This turned out to be a critical oversight by the parties, as evidenced by the apparent inconsistency in having independent claim 1 neither infringed nor anticipated, while dependent claim 9 is both infringed and anticipated. While Schrödinger's cat may be both alive and dead at any given moment, even in theory, claim limitations cannot be concurrently both met and not met.

The parties' attempts to manipulate the inconsistent jury verdict have left the procedural posture of this case an exhibit of frustrated strategy. After the jury verdict was entered, 3M moved for judgment as a matter of law with respect to validity, and moved for a new trial due to the inconsistencies in the verdict, including the infringement inconsistency. In its motion, 3M argued, *inter alia*, that the infringement verdicts could not be reconciled. Citing to *Jeneric/Pentron, Inc. v. Dillon Co.*, and *Wahpeton Canvas Co. v. Frontier, Inc.*, 3M explained that dependent claims cannot be infringed unless the independent claims from which they depend are infringed. *Jeneric/Pentron*, 205 F.3d 1377, 1383, 54 USPQ2d 1086, 1090 (Fed.Cir.2000); *Wahpeton*, 870 F.2d 1546, 1553, 10 USPQ2d 1201, 1208 (Fed.Cir.1989).

In its opposition to the motion for a new trial ("Opposition"), the defendants asserted that the jury findings were not irreconcilable. In the introduction to the Opposition the defendants stated: "This is not a situation in which the jury's findings on essential issues are 'in irreconcilable conflict,' such as might be the case where a jury finds, on the basis of a single factual allegation, that a particular proposition is 'true' and, at the same time, that its corollary is 'not true.' " Addressing 3M's spe-

cific assertion of inconsistency with respect to direct infringement, the defendants argued "[t]here is no irreconcilable conflict in the jury findings regarding direct infringement." They continued to argue in the alternative that "[a]ny inconsistency in the jury's interrogatory answers regarding direct infringement is, in all events, clearly irrelevant" because the claims were found to be invalid. In footnote 2 of the Opposition, which immediately followed this quote, the defendants stated:

> To the extent an inconsistency is presented by the jury's finding that defendants directly infringed dependent claim 9 of the '716 patent, but did not infringe independent claim 1 from which claim 9 depends, resolution of that inconsistency (in view of the relationship between dependent and independent claims under the patent law) requires a finding that neither claim 9 nor claim 1 is infringed. The law is clear that if an independent claim, here claim 1, is not infringed, claims dependent on that independent claim, e.g., claim 9, cannot be found to be infringed. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed.Cir.1989).

The district court ultimately concluded that the verdicts were not inconsistent. *Order*, slip op. at 1. At that time 3M renewed its motion for judgment as a matter of law on the defendants' invalidity defenses and renewed its motion for a new trial on both the infringement and validity issues. Both were denied.

3M has limited its issues on appeal to whether claim 9 was anticipated and whether Chemque had induced infringement of claim 9. Although 3M asserts that the finding of noninfringement of claim 1 was incorrect, it also repeatedly maintains that it is not challenging that finding, as-

serting only that by not challenging it, it does not lose the ability to rely on the infringement verdict for claim 9. The defendants have brought a conditional cross-appeal challenging the jury's finding that dependent claim 9 was infringed and challenging the district court's construction of the claim term "effective amount" and "cross-linking agents." This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

## STANDARD OF REVIEW

■ This court reviews a denial of JMOL following a jury verdict by reapplying the district court's standard of review. *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1354, 55 USPQ2d 1927, 1930 (Fed.Cir.2000). Therefore, a motion for JMOL should be granted if (1) the jury's factual findings, presumed or express, cannot be supported by substantial evidence, or (2) the legal conclusions implied from the jury's verdict cannot be supported by the jury's factual findings. *See Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1547–48, 31 USPQ2d 1746, 1751 (Fed.Cir.1994); Fed.R.Civ.P. 50(a)(1) (JMOL is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue...."). When reviewing a district court's denial of JMOL following a jury verdict, the court must "determine whether 'viewing the evidence in the light most favorable to the non-moving party,' and giving the non-movant 'the benefit of all reasonable inferences,' there is sufficient evidence of record to support a jury verdict in favor of the non-movant." *Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1289, 56 USPQ2d 1161, 1168 (Fed.Cir.2000) (quoting *Allied Colloids Inc. v. Am. Cyanamid Co.*, 64

F.3d 1570, 1573, 35 USPQ2d 1840, 1841 (Fed.Cir.1995)).

■ Claim construction is a question of law which this court reviews *de novo*. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1172 (Fed. Cir.1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1322 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

■ An issued patent is presumed valid and the burden is on the party challenging the validity of a patent to show that it is invalid by clear and convincing evidence. *Helifix Ltd. v. Blok–Lok Ltd.*, 208 F.3d 1339, 1346, 54 USPQ2d 1299, 1303 (Fed. Cir.2000).

■ Anticipation is a question of fact, and a jury determination of anticipation is reviewed for substantial evidence. *Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1378–79, 59 USPQ2d 1130, 1135 (Fed.Cir.2001). A patent is anticipated under § 102 if "(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States...." 35 U.S.C. § 102 (2000).

■ For prior art to anticipate under 35 U.S.C. § 102(a) because it is "known," the knowledge must be publicly accessible, *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370, 47 USPQ2d 1363, 1365 (Fed.Cir.1998), and it must be sufficient to enable one with ordinary skill in the art to practice the invention, *In re Borst*, 52 C.C.P.A. 1398, 345 F.2d 851, 855, 145 USPQ 554, 557 (1965). Whether a prior art reference is enabling is a question of law based upon underlying factual findings. *Crown Operations Int'l Ltd. v. Solutia, Inc.*, 289 F.3d 1367, 1376, 62 USPQ2d 1917, 1922 (Fed.Cir.2002). For prior art to anticipate because it has been "used," the use must be accessible to the public. *Woodland Trust*, 148 F.3d at 1370, 47 USPQ2d at 1365.

■ Public use under 35 U.S.C. § 102(b) includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor. *Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1321, 63 USPQ2d 1580, 1583 (Fed.Cir.2002). Whether a patent is invalid due to a § 102(b) public use is a question of law based on underlying questions of fact. *Id.*

■ In order to invalidate a patent under the on-sale bar of 35 U.S.C. § 102(b), an accused infringer must demonstrate by clear and convincing evidence that there was a definite sale or offer to sell more than one year before the application for the patent and that the product sold or offered for sale anticipated the claimed invention or rendered it obvious. *Cf. Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045–46, 59 USPQ2d 1121, 1124 (Fed.Cir.2001). A determination that a product was placed on sale prior to the critical date is a conclusion of law based on underlying findings of fact. *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1047, 61 USPQ2d 1225, 1229 (Fed.Cir.2001). We review the ultimate determination *de novo*. *Id.*

## DISCUSSION

### I. Inducement and Infringement

#### A. Infringement

■ Although the issue of the infringement of claim 9 only comes to us as a conditional cross-appeal, it is a predicate to the question of inducement of claim 9, which has been directly appealed. *See Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1033, 61 USPQ2d 1470, 1478 (Fed.Cir.2002) ("[T]here can be no inducement of infringement without direct infringement by some party."). Therefore, we must first decide the issue of infringement.

#### 1. Judicial Estoppel

■ In their brief, the defendants argue that the jury's unchallenged finding that claim 1 was not infringed is dispositive of any infringement-related issues for dependent claim 9. The defendants argue that because 3M has not appealed the jury's finding that claim 1 was not infringed, the noninfringement of claim 1 is final and undisputed for purposes of this appeal. Moreover, the defendants argue that it is a well-settled rule that dependent claims cannot be found to be infringed unless the claims from which they depend have been found to be infringed. As a result of this, the judgment that claim 9 has been infringed by the defendants cannot, as a matter of law, be sustained and must be reversed, according to the defendants.[1]

We hold that the defendants are judicially estopped from asserting that the jury verdicts are inconsistent. In this case, the defendants assert that the verdicts are inconsistent, and therefore we cannot rely on the finding of infringement of claim 9 because this court has repeatedly held that "it is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to be infringed[.]" *Wahpeton*, 870 F.2d at 1553, 10 USPQ2d at 1208; *accord Jeneric/Pentron*, 205 F.3d at 1383, 54 USPQ2d at 1090. The defendants, therefore, in arguing that claim 9 cannot be infringed because of the unchallenged finding that claim 1 is not infringed, are relying on the inconsistency in jury verdicts. However, not only did the defendants not raise this inconsistency before the district court, they expressly argued against a finding of inconsistency.

3M argues that as a result of the defendants' position before the trial court that the verdicts were not irreconcilable, the defendants are now estopped from asserting that they are inconsistent and are now estopped from asserting that we should not rely on the jury verdict for claim 9. In response, the defendants contend that the language in footnote 2 of the Opposition indicates that they admitted to the trial court that there was an inconsistency, and therefore they are not now changing their position.

■ Whether judicial estoppel applies is a matter of regional circuit law. *Wang*

---

1. This court applies the law of the regional circuit to the question of allegedly inconsistent jury verdicts. *EMI Group North America, Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1348, 60 USPQ2d 1423, 1427 (Fed.Cir. 2001). In *Snyder v. Trepagnier*, the Fifth Circuit explained its review of special verdicts:

 [W]e must make "a concerted effort to reconcile apparent inconsistencies ... if at all possible." We must ask whether "the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted...." Only if there is no view of the case that will make the jury's answers consistent may we set aside its decision.

 142 F.3d 791, 800 (5th Cir.1998) (first omission in original) (citations omitted).

*Labs., Inc. v. Applied Computer Sciences, Inc.,* 958 F.2d 355, 358, 22 USPQ2d 1055, 1058 (Fed.Cir.1992). In this case the law of the Fifth Circuit applies. Recently, in *In re Coastal Plains, Inc.,* the Fifth Circuit articulated the theory behind judicial estoppel. 179 F.3d 197 (5th Cir.1999). "The purpose of the doctrine is to 'protect the integrity of the judicial process', by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest'." *Id.* at 205 (citing *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir.1988)). The Supreme Court, in *New Hampshire v. Maine,* recently explained that several factors inform the decision of whether to apply the estoppel doctrine in a particular case. 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The Court recited a flexible, non-exhaustive list:

> First, a party's later position must be "clearly inconsistent" with its earlier position.... Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," ... Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," ... and thus poses little threat to judicial integrity.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped....

*Id.* (citations omitted).

In this case the position the defendants presented to the district court is in direct conflict with the position they are taking before this court. Reading the defendants' Opposition it is clear that their primary argument was that the verdict was consistent. It was only in the alternative that the defendants admitted some inconsistency. Moreover, they stated in the conclusion to the Opposition that "[t]here is no basis for ordering a new trial or otherwise disregarding the jury's findings. To the contrary, in the present circumstances, the Seventh Amendment mandates that the jury's verdict be given effect." The defendants cannot now argue that merely because they admitted, in the alternative, to some inconsistency, they cannot be estopped from arguing such an inconsistency today. The defendants argued to the trial court that the jury verdict should not be modified. They cannot now argue that it should. The defendants seek to have it both ways: to be able to argue to the trial court that the verdicts should not be changed, and to be able to argue to this court that they are inconsistent. Adding footnote two to the Opposition is not sufficient to overcome judicial estoppel when the defendants continued to argue that the trial court should take no steps to remedy the "inconsistency."

It is equally apparent that the district court accepted the defendants' position that the verdicts were not inconsistent. In response to 3M's motion for a new trial the court stated "[t]he Court has determined that the answers made by the jury to the questions asked in the charge are not in irreconcilable conflict and that the jury's answers are supported by evidence of record." *Order,* slip op. at 1.

Therefore, we do not hesitate in concluding that the defendants are estopped from asserting before this court that the jury verdict is inconsistent. By arguing that

we should ignore the jury finding of infringement of dependent claim 9 because of the jury finding of noninfringement of independent claim 1, the defendants are doing just that: arguing that the verdict is inconsistent and that we should rely on the part of it which is most beneficial to them. However, the defendants must be held to the position they argued before the district court: that the verdict is reconcilable. The district court agreed and that decision has not been appealed by 3M. The defendants cannot now take the opposite position so as to derive advantage. Therefore, we must review this case under the premise that the verdict is reconcilable and assume that claim 1 is not infringed and claim 9 is infringed.

### 2. Claim Construction

The arguments pertaining to claim construction arise in the context of the conditional cross-appeal but are critical to whether there was any infringement and therefore any inducement to infringe, and as such, must be reviewed.

■ The defendants assert that the district court erred in its Markman construction of the claim term "effective amount." *See Claim Construction,* slip op. at 6. They argue that the prosecution history mandates that the term be construed to require that all of the anhydride sites be reactive and that none be neutralized. A review of the prosecution history, however, does not indicate that 3M disclaimed a construction of the phrase that allows for some of the reactive sites to be neutralized. A fair reading of the prosecution history shows that 3M was distinguishing its invention over one in which all of the sites were neutralized. 3M, therefore, argued that it is contrary to the invention to neutralize the anhydride sites. There is

no indication, however, that 3M intended that all of the anhydride sites had to be reactive. As a result there is no reason to conclude that the district court erred in not including this limitation in its construction of "effective amount." *See id.*

■ Relying on the prosecution history, the defendants further argue that the district court erred in not requiring the formation of only covalent bonds between the anhydride compound and the cross-linking agent. *See id.* Again, the prosecution history does not mandate such a narrow construction. 3M distinguished its claims over prior art in which the reaction was completely ionic. 3M distinguished its claims by asserting that they require covalent cross-linking. It did not, however, specify that no ionic bonding could occur. It was therefore not error for the district court not to include this additional limitation in its claim construction. *See id.*

Therefore, we decline to hold that the district court erred in its claim construction and we find no reason to overturn the jury verdict that Chemque and T & B infringed claim 9.

### B. Inducement

Given that we must accept that claim 9 is infringed, we must address 3M's argument that the jury's finding that Chemque did not induce infringement of claim 9 is not supported by substantial evidence.

■ Inducement to infringe is defined by 35 U.S.C. § 271(b), which states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b) (2000). In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, *Epcon Gas*

*Sys., Inc. v. Bauer Compressors, Inc.,* 279 F.3d 1022, 1033, 61 USPQ2d 1470, 1478 (Fed.Cir.2002), and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement. *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553, 16 USPQ2d 1587, 1594 (Fed.Cir. 1990). *But see Hewlett–Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1469, 15 USPQ2d 1525, 1529 (Fed.Cir.1990) ("[P]roof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement.") (footnote omitted). In other words "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." *Manville,* 917 F.2d at 553, 16 USPQ2d at 1594.

◾ Chemque confronts the inducement claim by asserting that there can be no inducement of claim 9 because there is no infringement of claim 9, the claim construction was incorrect, and there are alternative grounds for invalidity. Aside from disputing 3M's assertions of the patent's validity and infringement, Chemque does not, in its brief, argue that the other requirements for proving inducement were not met. Chemque only challenges that there was not substantial evidence of direct infringement of claim 9, relying on the finding of noninfringement of claim 1. However, we have already disposed of this issue against Chemque, upholding the jury verdict finding both Chemque and T & B liable for infringement. Chemque does not assert that the jury's finding of no inducement is supported by substantial evidence for a different reason. While it is not Chemque's burden to do so, and we must defer to the jury's finding if there is

substantial evidence to support it, 3M has presented evidence to support its assertion that all of the requirements for inducement were met, and Chemque has failed to show that there is substantial evidence that any were not met. The record indicates that Chemque was aware of the 3M patents and supplied the infringing products to T & B and other customers with instructions on how they were to be used, which, when followed, would lead to infringement. Because Chemque has not provided support for the jury finding of non-inducement, we reverse the denial of JMOL that Chemque induced the infringement of claim 9.

## II. Validity

### A. Section 102

3M asserts that the district court erred in not granting it JMOL that claim 9 of the '716 patent is not anticipated because no single piece of prior art includes all of the elements of claim 9. To reverse the district court's denial of the judgment as a matter of law, this court would have to find that the jury verdict of anticipation is not supported by substantial evidence. For their assertion that the claim is anticipated, the defendants rely on a two-part composition known as Ricoseal made by Ricon Resins. We agree with 3M that there is not sufficient evidence of § 102 invalidity in the record to support a jury finding.

The parties discuss "anticipation" in general without clearly identifying to what they are referring. The defendants presented evidence which would indicate that they sought to assert invalidity by relying on multiple bases of § 102. We will treat the jury finding of anticipation as a finding of invalidity on the basis of any part of § 102. 35 U.S.C. § 102 reads in pertinent part:

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States....

35 U.S.C. § 102 (2000). A review of the defendants' opening brief indicates that at most four types of invalidity based on § 102 are asserted in this case: (1) § 102(a) invalidity because the invention was "known" by others in this country before the invention by the applicant for patent, (2) § 102(a) invalidity because the invention was "used" by others in this country before the invention by the applicant for patent, (3) § 102(b) invalidity because the invention was "in public use" in this country more than one year prior to the date of the application for patent in the United States, and (4) § 102(b) invalidity because the invention was "on sale" in this country more than one year prior to the date of the application for patent in the United States. The parties have failed to distill the critical issues for the court and have failed to provide a clear argument of their position. For purposes of clarity, we will address the arguments as they relate to the different types of invalidity.

*1. Section 102(a) invalidity by prior knowledge*

 For prior art to anticipate because it is "known," the knowledge must be pub-licly accessible. *Woodland Trust,* 148 F.3d at 1370, 47 USPQ2d at 1365. In addition, the disclosure must be sufficient to enable one with ordinary skill in the art to practice the invention. *In re Borst,* 345 F.2d at 855, 145 USPQ at 557. Therefore, the defendants' assertions about what has been "disclosed" by the Ricoseal prior art, by referring to the information provided that would allow one of skill in the art to reduce the invention to practice, are relevant to anticipation by what is "known."

 There is not substantial evidence to support the jury finding that the Rico-seal samples, as they were distributed, were enabling. In order to enable, the prior art reference must teach one of ordinary skill in the art to make or carry out the claimed invention without undue experimentation. *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.,* 166 F.3d 1190, 1195–96, 49 USPQ2d 1671, 1675 (Fed.Cir.1999). Noticeably absent from the record is testimony or evidence about what disclosure was actually sent with the samples, let alone whether it was enabling. The defendants have not highlighted any evidence of record that supports a jury finding that a person of ordinary skill in the art, upon receipt of the Ricoseal samples, would have any of the requisite information to make the claimed invention. Thus there cannot be anticipation by knowledge under § 102(a).

*2. Section 102(a) invalidity by prior use*

 For purposes of anticipation, a use must be accessible to the public. *Woodland Trust,* 148 F.3d at 1370, 47 USPQ2d at 1365. In order to overcome the presumption of validity, prior use must be proven by clear and convincing evidence. *Id.* at 1372–73, 47 USPQ2d at

1367–68. We agree with 3M that the jury finding of anticipation cannot be supported on the basis of this form of anticipation. There is insufficient evidence that Ricoseal was ever used.

3M asserts that the defendants presented no evidence that any third party or the inventors ever mixed the two parts of Ricoseal or that the mixture was applied to a signal transmission device. Essentially 3M is arguing that Ricoseal was never "used" for purposes of § 102(a). Although there is evidence in the record that samples of Ricoseal were sent to various corporations, there is no evidence of their use. The defendants have not directed this court to any record evidence showing that anyone ever used Ricoseal.

We agree with 3M that there is not substantial evidence of use of the Ricoseal product; there is no direct evidence of its use. Therefore, there is not substantial evidence to overcome the presumption of validity and support a jury finding of use. Thus the patent cannot be anticipated as being "used by others in this country ... before the invention thereof by the applicant for patent" under § 102(a).

*3. Section 102(b) invalidity by public use a year prior to the application date*

Although "public use" for purposes of § 102(b) is defined differently from "use" for purposes of § 102(a), both require actual use by someone at some point. As we have already concluded that there was insufficient evidence of any use of the Ricoseal product, claim 9 cannot be invalid on the basis of a prior public use under § 102(b).

*4. Section 102(b) invalidity by sale a year prior to the application date*

In *Pfaff v. Wells Electronics, Inc.,* the Supreme Court explained that for a patent to be invalid due to the on-sale bar, "[f]irst, the product must be the subject of a commercial offer for sale.... Second, the invention must be ready for patenting." 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). Recently, in *Group One, Ltd. v. Hallmark Cards, Inc.,* this court explained that

> As a general proposition, we will look to the Uniform Commercial Code ("UCC") to define whether, as in this case, a communication or series of communications rises to the level of a commercial offer for sale. As this court has previously pointed out, "[t]he UCC has been recognized as the general law governing the sale of goods and is another useful, though not authoritative, source in determining the ordinary commercial meaning of" terms used by the parties. .... The Supreme Court's formulation of a *"commercial* offer for sale" in *Pfaff* also supports consulting the UCC. The Supreme Court has also cited the Restatement of Contracts with approval in the commercial contract law context.

254 F.3d 1041, 1047, 59 USPQ2d 1121 (Fed.Cir.2001) (citations omitted). Subsequently, in *Linear Technology Corp. v. Micrel, Inc.,* this court explained that promotional activity not rising to the level of a contractual offer for sale cannot trigger the on-sale bar after *Group One.* 275 F.3d at 1049, 61 USPQ2d at 1230. The court in *Linear,* seeking to find the boundaries of a "commercial offer," further explained:

> The UCC does not define "offer," so we will look to common law to guide our inquiry. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Restatement (Second) of Contracts § 24*

(1981); *accord* Richard A. Lord, *Williston on Contracts* § 4:13, at 367 (4th ed. 1990) (explaining that "in order for an offer to exist, it must constitute a manifestation communicated to the offeree so as to justify his understanding that by assenting a bargain will be concluded").

275 F.3d at 1050, 61 USPQ2d at 1231.

 The defendants in this case assert that Ricon was offering Ricoseal for sale as a cable encapsulant in the United States more than a year before the applications for the 3M patents were filed. The evidence in the record, however, only indicates that Ricon had sent samples of Ricoseal to various companies. Providing potential customers with samples of a product, without providing any other terms, is not a commercial offer for sale, because the recipient could not act in such a way that would create a contract. It would not meet the Restatement definition of an offer, which is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Restatement (Second) of Contracts,* § 24 (1981). Therefore, the fact that Ricon sent samples of Ricoseal to various companies, without more, does not trigger the on-sale bar.

Although there is testimony in the record that in some instances price quotes were internally requested for the purpose of providing them to customers, this court in *Linear* explained that communications between a company and its sales representatives soliciting information on pricing for a product cannot constitute an offer for sale to a customer who is not privy to the communications. 275 F.3d at 1050, 61 USPQ2d at 1231. In this case there is no testimony or evidence in the record that price quotes were actually sent to customers in any particular instance. Therefore, no reasonable jury could have found that any sale-related information was sent with the samples, and therefore there could be no sale or offer for sale as a matter of law.

The jury did not have substantial evidence to support its verdict that claim 9 was invalid on the basis of § 102, and the district court erred in denying 3M's motion for judgment as a matter of law that the '716 patent was not anticipated.

## B. Alternate Grounds for Affirmance

 The defendants argue that there are alternate grounds on which to affirm the judgment. The first is that claim 9 is rendered obvious by Ricoseal. The second is that claim 9 is invalid as indefinite because claim 1 and claim 9 fail to distinctly claim the invention in such a way that a person skilled in the art can determine the scope of the claim. The defendants claim these are merely alternate grounds for affirmance and thus they are entitled to assert them on appeal. *See MEHL/Biophile Int'l Corp. v. Milgraum,* 192 F.3d 1362, 1366, 52 USPQ2d 1303, 1306 (Fed. Cir.1999); *Glaxo, Inc. v. TorPharm, Inc.,* 153 F.3d 1366, 1371–72, 47 USPQ2d 1836, 1840–41 (Fed.Cir.1998). 3M argues that the defendants did not preserve the right to appeal these points because the defendants' notice of cross-appeal included only the issues of inducement, infringement, and claim construction. In addition, 3M argues that these cannot be alternate grounds for affirmance because they were expressly rejected by the jury. The jury found that claim 9 was nonobvious and not indefinite and the defendants did not appeal this in their notice of appeal.

 Whether a notice of appeal has adequately presented an issue to this court

is a question of Federal Circuit law. *Cf. State Contracting & Eng'g Corp. v. Florida,* 258 F.3d 1329, 1334–35, 59 USPQ2d 1498, 1502 (Fed.Cir.2001) (whether a premature notice of appeal ripens upon entry of a proper Rule 56(b) certification is a matter of Federal Circuit law). Federal Rule of Appellate Procedure 3(c) describes the requirements for a notice of appeal. In particular Federal Rule of Appellate Procedure 3(c)(1)(B) requires that the party "designate the judgment, order, or part thereof being appealed." Although this court has not articulated how thorough the notice must be, one of our predecessor courts, the Court of Customs and Patent Appeals, in *Montgomery Ward & Co. v. United States,* explained that we should liberally construe Federal Rule of Appellate Procedure 3. 61 C.C.P.A. 101, 499 F.2d 1283, 1289 (1974). However, even a liberal construction of the notice requirement in this case warrants finding that there is no jurisdiction since the notice of appeal for the cross-appeal does not even mention validity issues. The defendants did not raise any validity issues in their cross-appeal and only anticipation was directly appealed by 3M. This is insufficient to bring all of forms of invalidity into issue, because the district court judgment specified particular types of invalidity, and changing the basis for the invalidity determination from anticipation to obviousness or indefiniteness would require modifying the judgment. Under *United States v. American Railway Express Co.,* this would require a cross-appeal since it requires a modification of the judgment. 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924). Obviousness and indefiniteness were not appealed and we do not have jurisdiction to consider them.

## CONCLUSION

For the foregoing reasons we reverse the district court's denial of judgment as a matter of law that the defendants induced the infringement of claim 9 of the '716 patent, we reverse the district court's denial of judgment as a matter of law that claim 9 was not anticipated, and we affirm the district court's claim construction. We remand to the district court for a determination of damages not inconsistent with this opinion.

*AFFIRMED–IN–PART, REVERSED–IN–PART and REMANDED.*

## COSTS

No costs.

MAYER, Chief Judge, dissenting.

Because I believe the district court properly determined that the jury's verdict is supported by substantial evidence, I dissent. I would affirm the judgment that claim 9 of U.S. Patent No. 5,169,716 is invalid for anticipation.

A claim is anticipated if a single prior art reference contains each and every limitation either expressly or inherently. *Bristol–Myers Squibb Co. v. Ben Venue Labs., Inc.,* 246 F.3d 1368, 1374, 58 USPQ2d 1508, 1512 (Fed.Cir.2001). Anticipation is a factual question that we review for substantial evidence on appeal from a jury trial. *Advanced Display Sys. Inc. v. Kent State Univ.,* 212 F.3d 1272, 1281, 54 USPQ2d 1673, 1678 (Fed.Cir.2000).

The record contains substantial evidence to support the jury's determination that every limitation of claim 9 of the '716 patent, which was filed on May 11, 1989, was present in Ricon Resin's Ricoseal in 1986. Claim 9 contains fourteen limitations. Limitations 1, 2, and 3, that the encapsulant at issue be used as an insulating covering for signal transmission de-

vices, are met by record evidence that Ricon Resin sold Ricoseal as a "cable encapsulant." Ricoseal met limitation 4, a C–H adhesion value of at least 4.0, because Ricoseal had a total solubility parameter of about 8.0, and Minnesota Mining and Manufacturing Company's (3M) expert testified at trial that that would inherently mean the claimed C–H value. In its brief, 3M admitted that the product is an admixture of the required compounds, limitation 5, but denied that Ricon demonstrated any evidence of actual mixing. Chemque's technical expert, Brauer, however, testified that there is no question that Ricon mixed the compounds together, and 3M's employee Haugen testified that he understood that Ricoseal was a two-part compound, of which 3M received a sample with descriptive product literature. Limitations 6 and 8 are met, "effective amounts of" the active compounds, by Ricon's notebooks setting out the precise amount of each compound used in Ricoseal; and 3M admits that the anhydride functionalized compound, limitation 7, and the cross-linking agent, limitation 9, are present in Ricoseal. 3M's technical expert, Fahey, during cross-examination, admitted that Ricoseal was a crosslinked material, limitation 10. In its brief, 3M admitted that limitations 11 and 12 are present in Ricoseal. With twenty-three years of experience in the field of encapsulants, Chemque's expert, Brauer, testified that Ricoseal would be substantially non-exuding, limitation 13, and Ricon's records state that the patented compound R131/MA was superior to R184/MA for which only "some bleeding" occurred. Last, 3M's expert, Croft, stated that with a solubility parameter of about 8.0, a polycarbonate value of at least 80, limitation 14, was inherent.