# United States Court of Appeals for the Federal Circuit

04-1024

BERNHARDT, L.L.C.,

Plaintiff-Appellant,

v.

COLLEZIONE EUROPA USA, INC.,

Defendant-Appellee.

Stephen Robinson, Robinson & Lawing, LLP, of Winston-Salem, North Carolina, and Kevin L. Miller, argued for plaintiff-appellant. With him on the brief were Norwood Robinson and Michael L. Robinson.

Nicholas Mesiti, Heslin Rothenberg Farley & Mesiti P.C., of Albany, New York, argued for defendant-appellee. With him on the brief was Brett M. Hutton. Of counsel on the brief was Peter J. Juran, Blanco Tackabery Combs & Matamoros, P.A., of Winston-Salem, North Carolina.

Appealed from: United States District Court for the Middle District of North Carolina

Judge Frank W. Bullock, Jr.

# United States Court of Appeals for the Federal Circuit

04-1024

BERNHARDT L.L.C.,

Plaintiff-Appellant,

v.

COLLEZIONE EUROPA USA, INC.,

Defendant-Appellee.

_____

DECIDED:  October 20, 2004
_____

Before MAYER, Chief Judge, MICHEL, and LINN, Circuit Judges.

LINN, Circuit Judge.

Bernhardt L.L.C. ("Bernhardt") appeals from a final judgment of the United States District Court for the Middle District of North Carolina ("district court") in favor of Collezione Europa USA, Inc. ("Collezione"), that the six design patents-in-suit were not infringed and that four of the design patents-in-suit were invalid for prior public use under 35 U.S.C. § 102(b). Bernhardt L.L.C. v. Collezione Europa USA, Inc., 280 F. Supp. 2d 485 (M.D.N.C. 2003). Because the district court did not fully apply the proper tests for invalidity and infringement, we vacate and remand for further proceedings.

## I. BACKGROUND

### A. The Parties

Bernhardt is the intellectual property licensing unit of Bernhardt Furniture Co., a furniture manufacturer. Id. at 487. Bernhardt owns the six design patents at issue in this case: D438,727 ("the '727 patent"); D439,763 ("the '763 patent"); D439,770 ("the '770 patent"); D441,560 ("the '560 patent"); D441,975 ("the '975 patent"); D441,980 ("the '980 patent") (collectively, "the patents-in-suit"). Id. The validity of four of these patents, specifically the '980, '770, '975, and '560 patents ("the Pre-Market patents"), is disputed. Id. Bernhardt filed applications leading to the issuance of the design patents-in-suit between July and October 2000. Id. at 488. The following figures depict two representative furniture designs patented by Bernhardt:



'727 patent, Fig. 1 (buffet); '975 patent, Fig. 1 (end chair). Bernhardt Furniture Co., as a licensee of the six patents-in-suit, sells furniture embodying the patented designs in its Coronado Collection. Bernhardt, 280 F. Supp. 2d at 489.

Collezione is a New Jersey corporation which imports and sells furniture, generally at a lower price than many other firms in the furniture industry. Id. at 487.

04-1024                                        2

B.  <u>Market and Pre-Market</u>

Bernhardt participates in the International Home Furnishing Market ("Market"), held in October and April of each year in North Carolina.  <u>Id.</u> at 488.  A month before the Market event, Bernhardt organizes and conducts what it terms a "Pre-Market" exhibition ("Pre-Market") at which it showcases its new designs to its key customers and  to representatives from an industry newspaper.  <u>Id.</u>  Bernhardt uses its Pre-Market exhibition to demonstrate the concepts of the furniture collections under development, to gauge customer reaction, and to increase customer demand at Market.  <u>Id.</u> at 489.

Each of Bernhardt's furniture designs is assigned a six-digit "stock keeping unit" ("SKU") number, which stays with a design from early in the design process through all subsequent re-designs.  <u>Id.</u>  In preparation for Pre-Market, Bernhardt generates a document listing the SKUs of the furniture it would like to exhibit at Pre-Market ("the Pre-Market Wish List").  <u>Id.</u> at 489-90.

Bernhardt also prepares and maintains an invitation list of the customers and other persons invited to Pre-Market.  <u>Id.</u> at 488.  To be admitted to Pre-Market, an attendee must show identification, which is checked in the lobby of the exhibition building.  <u>Id.</u> at 489.  The attendee is then escorted by security personnel to the entrance of the showroom, where identification is again checked.  <u>Id.</u> Bernhardt sales representatives then meet the attendee and escort him or her around the showroom. <u>Id.</u>  Attendees are not allowed to take pictures or to take anything into the showroom. <u>Id.</u> Attendees are not required to sign a confidentiality agreement restricting disclosure of the designs they see at Pre-Market.  <u>Id.</u>

During Pre-Market, Bernhardt showcases its new designs in its showroom. The designs take the form of mock-ups, prototypes, drawings, or other furniture exemplars. Id. at 488. Comments from Pre-Market attendees concerning the displayed furniture designs are included in a summary document entitled the "Pre-Market Wrap-up." Id. at 489. Only representative pieces from a given collection are displayed at Pre-Market. Id. at 488. The designs initially presented at Pre-Market may sometimes be different from the final designs ultimately introduced at Market. Id. at 488-89.

At the September 1999 Pre-Market, Bernhardt showcased a planned line of furniture. The designs, with some modifications, were later adopted in Bernhardt's Coronado Collection introduced to the consuming public at Market. Aspects of the designs in this collection are the subject of the patents-in-suit.

## C. Procedural History

On October 19, 2001, Bernhardt sued Collezione, alleging Collezione infringed Bernhardt's patented designs by offering for sale poster beds, side and end dining chairs, dining tables, buffets, and cabinets in Collezione's 2200 collection. Collezione answered, denying infringement of all of the patents-in-suit and bringing counterclaims for declaratory judgment of patent misuse, invalidity, unenforceability, and non-infringement. On July 3, 2002, the district court dismissed Collezione's counterclaims for patent misuse and unenforceability. Collezione moved for summary judgment that the four Pre-Market patents were invalid under 35 U.S.C. § 102(b) for prior public use. This motion was denied by the district court on February 25, 2003.

The district court conducted a Markman hearing and construed the patent claims. Bernhardt L.L.C. v. Collezione Europa USA, Inc., No. 101CV00957, 2003 WL 21254634

(M.D.N.C. May 30, 2003) ("Claim Construction Opinion"). Those initial claim constructions are not disputed. During the Markman hearing, the parties disputed, inter alia, whether a determination of the points of novelty was part of claim construction. Finding that the points of novelty issue was a question for the fact finder, the court postponed a determination of the points of novelty until trial.

A bench trial was conducted on June 30 and July 1, 2003. At trial, the parties disputed which designs were exhibited at the September 1999 Pre-Market exhibition and whether the exhibition, which admittedly took place more than one year prior to the October 2000 filing dates of Bernhardt's Pre-Market patents (the '980, '770, '975, and '560 patents), was a public use under 35 U.S.C. § 102(b). Following the trial, the district court held that the designs covered by the four Pre-Market patents had been placed in prior public use by Bernhardt at its September 1999 Pre-Market exhibition, rendering the Pre-Market patents invalid under 35 U.S.C. § 102(b). The district court also held the six patents-in-suit not infringed. Bernhardt L.L.C. v. Collezione Europa USA, Inc., 280 F. Supp. 2d 485 (M.D.N.C. 2003). The district court entered final judgment in favor of Collezione.

Bernhardt appeals the invalidity and non-infringement judgment. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. ANALYSIS

### A. Standard of Review

"Whether or not an invention was on sale or in public use within the meaning of section 102(b) is a question of law that this court reviews de novo; however, factual findings underlying the trial court's conclusion are subject to the clearly erroneous

standard of review." <u>Manville Sales Corp. v. Paramount Sys., Inc.</u>, 917 F.2d 544, 549 (Fed. Cir. 1990); <u>see also</u> <u>Tone Bros., Inc. v. Sysco Corp.</u>, 28 F.3d 1192, 1197 n.3 (Fed. Cir. 1994). "A finding is clearly erroneous when, despite some supporting evidence, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" <u>Glaxo Group, Ltd. v. Apotex, Inc.</u>, 376 F.3d 1339, 1346 (Fed. Cir. 2004) (quoting <u>United States v. U.S. Gypsum Co.</u>, 333 U.S. 364, 395 (1948)).

Claim construction is a question of law we review de novo. <u>Int'l Rectifier Corp. v. IXYS Corp.</u>, 361 F.3d 1363, 1369 (Fed. Cir. 2004). Infringement is a question of fact that we review for clear error. <u>Amgen, Inc. v. Hoechst Marion Roussel, Inc.</u>, 314 F.3d 1313, 1339 (Fed. Cir. 2003).

## B. <u>Invalidity</u>

Bernhardt filed patent applications leading to the issuance of the four Pre-Market patents (the '980, '770, '975, and '560 patents) between October 10 and 13, 2000—more than one year after the September 1999 Pre-Market exhibition at issue. <u>See</u> <u>Bernhardt</u>, 280 F. Supp. 2d at 487-88. The district court concluded, after trial, that the four Pre-Market patents were invalid under 35 U.S.C. § 102(b) for prior public use at Bernhardt's September 1999 Pre-Market exhibition. <u>Id.</u> at 497. The dates are not contested but the parties dispute whether Collezione adduced sufficient facts at trial to meet its clear and convincing evidentiary burden as to the designs exhibited at Pre-Market and whether the exhibition was "public" within the meaning of 35 U.S.C. § 102(b).

### 1. <u>The Exhibited Designs</u>

#### a. <u>Collezione's Evidentiary Showing</u>

The parties agree that pieces of Bernhardt's Coronado Collection were displayed at the 1999 Pre-Market exhibition, but the details and extent of the designs actually displayed are contested. Id. at 494. To prove invalidity, Collezione introduced evidence to show that four SKUs for furniture pieces argued to embody designs relating to the Pre-Market patents were listed on the Pre-Market Wish List. Id. Collezione also presented testimony that a SKU's inclusion on the Pre-Market Wish List meant that the piece would be shown at Pre-Market. Id. To further establish that certain designs were actually exhibited, Collezione relied on the Pre-Market Wrap-Up document, which contained comments regarding three of the SKUs corresponding to the Pre-Market patents. Id.

After reviewing the evidence, the district court found that it was "highly probable that the furniture designs for the four SKUs corresponding to the Pre-Market patents were shown at the 1999 Pre-Market." Id. at 495. The court also found that following Pre-Market, some changes were made to the furniture designs exhibited at Pre-Market. Id. at 490. Nonetheless, the district court concluded that the designs argued to have been shown at the 1999 Pre-Market were not substantially different from the patented designs depicted in the Pre-Market patents. Id. at 495. The district court found that none of the changes made to the exhibited designs following Pre-Market "significantly affected the aesthetics of the Pre-Market patents' design." Id.

Bernhardt argues that Collezione failed to adduce facts supported by clear and convincing evidence that furniture designs embodying the Pre-Market patents were actually exhibited or observed at Pre-Market. Bernhardt contends that the presence of SKUs on the Pre-Market Wish List document does not indicate that any of the

corresponding furniture designs were actually displayed on the Pre-Market showroom floor. Moreover, Bernhardt argues that the mere presence of the SKUs noted in the Pre-Market Wrap-Up document do not indicate that furniture designs containing the Pre-Market patents' points of novelty were displayed at Pre-Market. Bernhardt thus argues that the district court clearly erred when it concluded that furniture items that were "the same or similar" to the Pre-Market patented designs were exhibited at Pre-Market. Bernhardt not only asserts a failure of Collezione's proof on invalidity but a failure on the part of the district court to analyze Collezione's proofs against both the "ordinary observer" and "points of novelty" tests. Bernhardt thus contends that Collezione failed to establish a prior public use of the patented designs and that Collezione's evidence only established preparations for a possible Pre-Market display of furniture pieces that might have resembled the patented designs.

Collezione responds that the district court correctly found that Collezione presented clear and convincing evidence that Bernhardt displayed its patented designs at the 1999 Pre-Market. Collezione argues that the district court relied on Bernhardt's own Pre-Market Wish List and Wrap-Up documents and on corroborating testimony by Bernhardt's employees in concluding that furniture pieces embodying the patented designs were actually displayed at Pre-Market. Collezione contends that because Bernhardt has not established clear error in the district court's factual findings that the patented designs were displayed at Pre-Market, these findings should not be reversed.

## b. The Applicable Standard

Section 102(b) provides in relevant part: "A person shall be entitled to a patent unless . . . the invention was . . . in public use or on sale in this country, more than one

year prior to the date of the application for patent in the United States . . . ." 35 U.S.C. § 102(b) (2000). Section 171 specifies in pertinent part that "the provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided." Id. § 171.

In Litton Systems, Inc. v. Whirlpool Corp., 728 F.2d 1423, 1440 (Fed. Cir. 1984), overruled on other grounds by Two Pesos, Inc. v Taco Cabana, Inc., 505 U.S. 763 (1992), we held that "[t]he tests for determining the validity of a design patent issued pursuant to 35 U.S.C. § 171 are identical to those tests currently espoused by this court for determining the validity of a utility patent issued pursuant to 35 U.S.C. § 101." For utility patents, a determination of whether a patent is invalid for prior public use under § 102(b) requires comparison of the patent claims to the alleged public use. See Minn. Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1301 (Fed. Cir. 2002) ("Public use under 35 U.S.C. § 102(b) includes any use of the claimed invention . . . ." (emphasis added)). To properly make this comparison, the court must first construe the claim limitations at issue. "[A] court may not invalidate the claims of a patent without construing the disputed limitations of the claims and applying them to the allegedly invalidating acts." Dana Corp. v. Am. Axle & Mfg., Inc., 279 F.3d 1372, 1376 (Fed. Cir. 2002). Furthermore, each limitation of the construed patent claim must be anticipated or rendered obvious by the prior public use of the invention. Netscape Communications Corp. v. Konrad, 295 F.3d 1315, 1321 (Fed. Cir. 2002) ("Section 102(b) may bar patentability by anticipation if the device used in public includes every limitation of the later claimed invention, or by obviousness if the differences between the claimed invention and the device used would have been obvious to one of ordinary skill in the

art."); Lough v. Brunswick Corp., 86 F.3d 1113, 1122 n.5 (Fed. Cir. 1996) ("Moreover, section 102(b) may create a bar to patentability either alone, if the device used in public is an anticipation of the later claimed invention or, in conjunction with 35 U.S.C. § 103, if the differences between the claimed invention and the device used would have been obvious to one skilled in the art."). Finally, a party challenging patent invalidity for prior public use under § 102(b) must establish invalidity by facts supported by clear and convincing evidence. Tone Bros., 28 F.3d at 1197 n.4; Manville Sales, 917 F.2d at 549.

The same principles apply to the assessment of prior public use under 35 U.S.C. § 102(b) of a design patent. In Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308 (Fed. Cir. 2001), we commented that for design patents, both the infringement and anticipation "test[s] require[] the court to first construe the claimed design, if appropriate, and then to compare the claimed design to the article." Id. at 1312 (citing OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1404 (Fed. Cir. 1997)). For design patent infringement, the comparison step requires satisfaction of both the ordinary observer and the point of novelty tests. Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1377 (Fed. Cir. 2002) (noting that there are "two distinct tests, both of which must be satisfied in order to find infringement"); Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1286 (Fed. Cir. 2002) ("As with utility patents, determining whether a design patent is infringed is a two-step process. First, the court must construe the design patent's claim. Next, the fact-finder must compare the claim and the accused device, employing both the 'ordinary observer' test and the 'point of novelty' test." (internal citation omitted)). The test for determining invalidity is the same. Thus, to invalidate a design patent based on a prior public use under 35 U.S.C. § 102(b), the fact

finder must compare the claim and the prior public use, employing both the ordinary observer and point of novelty tests.

### c. Application of the Standard to the Evidence Presented

In this case, the district court was required to determine whether Collezione established facts supported by clear and convincing evidence that the furniture designs displayed at Pre-Market met both the ordinary observer and point of novelty tests. It is unclear from the district court's opinion whether both of these tests were correctly applied. The district court found that the patented designs were in public use at Pre-Market because "SKUs which correspond to four of the patents were included" on the Pre-Market Wish List, and because comments on three of these four SKUs appeared on the Pre-Market Wrap-Up. Bernhardt, 280 F. Supp. 2d at 494. While the court concluded that each of Bernhardt's furniture pieces corresponding to each SKU were "similar to" the furniture design "shown in" each of Bernhard's design patents, id., the analysis does not discuss or explain whether the furniture designs actually displayed at Pre-Market were substantially similar in appearance in the eyes of an ordinary observer to the claimed designs or appropriated the points of novelty of the patented designs. Only after making these determinations could the district court properly assess whether an invalidating public use within the scope of § 102(b) had occurred. The fact that the exhibited designs were Bernhardt's own designs does not diminish the analysis required by the district court and did not obviate Collezione's burden to prove that the designs were covered by the claims, meaning not only similar in appearance to the ordinary observer but also embodying the points of novelty.

### 2. Pre-Market as a "Public Use"

### a. Collezione's Evidentiary Showing

Collezione also bore the burden of establishing by facts supported by clear and convincing evidence that Bernhardt's 1999 Pre-Market was "public" within the meaning of 35 U.S.C. § 102(b). See Manville Sales, 917 F.2d at 549. To meet that burden, Collezione presented evidence that at least sixty-nine of Bernhardt's customers and newspaper reporters from Furniture Today had access to view the designs. Collezione produced testimony that these Pre-Market attendees were not required to sign confidentiality agreements, and had no legal obligations not to discuss the designs they saw with anyone else. Collezione also presented testimony that Bernhardt held Pre-Market to receive feedback from its customers and used that feedback to determine whether its designs would be successful. Collezione thus contended that Bernhardt had a commercial motivation in conducting Pre-Market. Collezione also presented testimony that Bernhardt representatives discussed approximate prices with customers at Pre-Market and used Pre-Market to induce customers to show up on the first day of Market, presumably to purchase Bernhardt's furniture.

### b. The Applicable Standard

"Public use under 35 U.S.C. § 102(b) includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." Minn. Mining, 303 F.3d at 1301; see also In re Smith, 714 F.2d 1127, 1134 (Fed. Cir. 1983). "The only use possible for an ornamental design is its embodiment, exhibition, and observation." In re Mann, 861 F.2d 1581, 1581 (Fed. Cir. 1988). Public use is a question of law based on underlying facts. Manville Sales, 917 F.2d at 549. In determining whether an invention was in public use, a court "must

consider how the totality of the circumstances comports with the policies underlying the on sale and public use bars," id. at 549, including "discouraging the removal of inventions from the public domain which the public justifiably comes to believe are freely available, prohibiting an extension of the period for exploiting the invention, and favoring prompt and widespread disclosure of inventions," id. at 550 (internal quotation marks omitted). Additional factors a court must consider and weigh in determining whether the use was "public" under § 102(b) include, inter alia, "the nature of the activity that occurred in public; the public access to and knowledge of the public use; [and] whether there was any confidentiality obligation imposed on persons who observed the use . . . ." Allied Colloids Inc. v. Am. Cynamid Co., 64 F.3d 1570, 1574 (Fed. Cir. 1995); see also Netscape, 295 F.3d at 1320. The presence or absence of a confidentiality agreement is not dispositive of the public use issue, but "is one factor to be considered in assessing all the evidence." Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1266 (Fed. Cir. 1986).

This court has considered the effect of confidentiality agreements and ethical obligations in assessing the "public use" issue in a number of cases. In Moleculon, the question was whether a display of models to the inventor's school colleagues was a public use. Id. at 1265. The district court found that the inventor "never used the [invention] or permitted it [to be] used in a place or at a time when he did not have a legitimate expectation of privacy and of confidentiality." Id. at 1265. On appeal, this court agreed, stating that the district court correctly found that the inventor "at all times retained control over the [invention]'s use and the distribution of information concerning it." Id. at 1266. In Baxter, this court concluded that an invalidating public use had been

made, based on testimony by the inventor that he demonstrated the claimed invention to co-workers and visitors who were under no duty to maintain its confidentiality. Baxter Int'l, Inc. v. Cobe Labs., Inc., 88 F.3d 1054, 1058 (Fed. Cir. 1996). The Baxter court found that the inventor's "lack of effort to maintain the [invention] as confidential coupled with the free flow into his laboratory of people . . . who were under no duty of confidentiality" supported only the conclusion that the invention was in public use. Id. at 1059. In Beachcombers, the court found public use of the invention at a house party involving twenty to thirty guests hosted by the inventor. Beachcombers v. Wildewood Creative Prods., Inc., 31 F.3d 1154, 1159-60 (Fed. Cir. 1994). At the party, the inventor testified that "she personally demonstrated the device to some of the guests for the purpose of getting feedback on the device; and that she made no efforts to conceal the device or keep anything about it secret." Id. at 1160.

### c. The District Court's Analysis

Citing Beachcombers and Baxter, the district court concluded that Bernhardt's Pre-Market exhibition of its furniture designs constituted an invalidating public use under 35 U.S.C. § 102(b). Bernhardt, 280 F. Supp. 2d at 497. Bernhardt challenges that conclusion and argues that the 1999 Pre-Market exhibition was not "public" within the meaning of § 102(b). Bernhardt states that Pre-Market was limited to a small number of industry insiders and access was tightly controlled. Bernhardt contends that the district court overlooked the fact that there was no effective means for the attendees to divulge the designs they viewed at Pre-Market because no photographs or sketches of the ornamental designs were permitted, nor were any handouts provided. Bernhardt argues it did not need to require that attendees sign confidentiality agreements because

it presented evidence that there was an industry-wide understanding that Pre-Market attendees were to hold in confidence the designs they viewed. Further, Bernhardt points out that such a breach of confidence could have serious consequences for an attendee—it could lead to a termination of his or her relationship with Bernhardt and a loss of reputation and trust by other furniture manufacturers.

Collezione argues that the district court's legal conclusion that the exhibition of these designs was "public" under § 102(b) should not be disturbed. Collezione contends that Bernhardt's primary goal during the 1999 Pre-Market was to introduce new designs to its customers and media representatives, who were allowed to view the designs without signing confidentiality agreements. Furthermore, Collezione points out that because potential prices and availability of furniture pieces were discussed at Pre-Market, Bernhardt intended to commercially exploit its new furniture designs at that exhibition. Collezione states that the district court correctly found that Bernhardt failed to establish that the 1999 Pre-Market attendees were under any ethical obligation to keep confidential the designs they viewed. Collezione argues that the district court's conclusion that the 1999 Pre-Market exhibition was a public use is consistent with the policies underlying the public use statutory bar.

The district court's analysis of whether Collezione had presented facts supported by clear and convincing evidence that Bernhardt's 1999 Pre-Market was a public use under 35 U.S.C. § 102(b) was misdirected. The district court rested its analysis on the conclusion that

> Plaintiff has not provided sufficient evidence that these invitees were under any discernible duty or ethical obligation to maintain what they viewed as confidential. While it may be a dubious business decision, there was little stopping these invitees from passing on what information

or details they gathered at Pre-Market to the public or for their financial advantage.

Bernhardt, 280 F. Supp. 2d at 497. While it is clear that Pre-Market attendees were not required to sign confidentiality agreements, id. at 489, the district court's conclusion seemingly overlooks the evidence Bernhardt presented to show that in the circumstances of this case, confidentiality agreements were unnecessary. At trial, Bernhardt presented the testimony of James R. Collett, a general manager at Bernhardt Furniture Co., that although no confidentiality agreement was provided to Pre-Market attendees, "[i]t's pretty well understood that confidentiality applies to premarket [sic]." Joint Appx. at 1192-93 (Collett direct examination). Collett testified that the Pre-Market attendees have an incentive not to divulge Bernhardt's designs, because they would not be able to participate if they divulged the Pre-Market designs. Id. at 1193 (Collett direct examination). Bernhardt presented additional testimony by Collett that Pre-Market was not open to the public, that the identification of attendees was checked against a list of authorized names both by building security and later at a reception desk near the showroom, that attendees were escorted through the showroom, and that attendees were not permitted to make written notes or take photographs inside the showroom. Bernhardt, 280 F. Supp. 2d at 489; see also Joint Appx. at 1191-93 (Collett direct examination).

The presence or absence of a confidentiality agreement is not dispositive of the public use issue, but "is one factor to be considered in assessing all the evidence." Moleculon, 793 F.2d at 1266. The district court focused on the absence of any confidentiality agreements and did not discuss or analyze how the totality of circumstances surrounding Bernhardt's 1999 Pre-Market comports with the policies

underlying the public use bar. As we previously noted, these policies include "discouraging the removal of inventions from the public domain which the public justifiably comes to believe are freely available, prohibiting an extension of the period for exploiting the invention, and favoring prompt and widespread disclosure of inventions," Manville Sales, 917 F.2d at 550 (internal quotation marks omitted), and "the nature of the activity that occurred in public; the public access to and knowledge of the public use; [and] whether there was any confidentiality obligation imposed on persons who observed the use," Allied Colloids, 64 F.3d at 1574. See also Netscape, 295 F.3d at 1320.

Because the district court did not examine whether Collezione established facts supported by clear and convincing evidence that Bernhardt's displayed furniture designs at Pre-Market fell within the scope of Bernhardt's patented designs, applying both the ordinary observer and point of novelty tests, and because the district court's analysis of the "public" nature of the exhibition was incomplete, we vacate the district court's finding of invalidity based on prior public use under § 102(b) and remand the validity issue to the district court for further proceedings consistent with this opinion.

## C. Infringement

The parties principally dispute whether Bernhardt met its burden of establishing that Collezione's accused designs appropriated the points of novelty of Bernhardt's patented designs. At the outset of this case, the parties disagreed on when and how the district court should determine the points of novelty. Bernhardt, 280 F. Supp. 2d at 498. Bernhardt had represented to the court that the task of determining points of novelty was not part of the court's claim construction responsibilities and promised to

establish the points of novelty at trial. The district court declined to find points of novelty at the claim construction stage. Id. at 499; see also Claim Construction Opinion, 2003 WL 21254634, at *6 ("Following the presentation of evidence, the court will determine what point or points of novelty distinguish each patent from the prior art, and whether the accused products have appropriated them."). Following the trial, the district court found Collezione's furniture designs were substantially similar to Bernhardt's patented designs, concluding that Bernhardt had established infringement of its patents under the ordinary observer test. Bernhardt, 280 F. Supp. 2d at 498. However, the court found that Bernhardt failed to establish that Collezione's designs appropriated the points of novelty of its furniture designs. Id. at 499. Specifically, the district court stated that Bernhardt "failed to fulfill its promise" by only introducing the design patents and prosecution histories into evidence at trial and by declining to present any testimony explaining its proposed points of novelty or otherwise educating the court on both the points of novelty and the extent to which Collezione's designs incorporated the same. Id. Noting that Bernhardt bore the evidentiary burden on infringement and did "little or nothing at trial to assist the court and prove its case," the court found that, "Plaintiff [Bernhardt] has offered no evidence and consequently has not satisfied its burden of proof with regard to the point of novelty test . . . ." Id. The court thus concluded that Bernhardt failed to establish that Collezione appropriated the points of novelty of its design patents. Id. at 499-500.

On appeal, Bernhardt argues that the district court erred in concluding that Bernhardt failed to prove its infringement case. Bernhardt argues that it submitted all of the evidence the trial court needed to determine the points of novelty of the patents-in-

suit—namely, the patents, their complete prosecution histories, and all of the references cited during prosecution—and filed proposed findings of fact and conclusions of law that specified its contentions as to the points of novelty. Bernhardt argues that in making the required comparison between the patented design and the prior art, the district court was free to regard Bernhardt's proposed findings of fact as limiting stipulations, or even disregard them and make its own independent assessment. But Bernhardt contends that requiring expert testimony regarding design patents, which simply claim the designs as shown, would be unnecessary. Further, Bernhardt points out that having an expert merely repeat from the witness stand a party's arguments about the points of novelty would not transmute those arguments into evidence or relieve the fact finder of its obligation to make its own comparisons of the claimed design to the prior art.

Collezione defends the district court's judgment that Collezione did not infringe Bernhardt's design patents, arguing that Bernhardt failed to meet its burden of establishing by preponderant evidence that Collezione appropriated the points of novelty of Bernhardt's patented designs. Collezione argues that because Bernhardt represented to the district court that the points of novelty issue was a fact issue for trial, Bernhardt was required to do more than submit the patents, prosecution histories, and prior art. Collezione contends that Bernhardt did not provide even one witness or one document to explain which features of its patented designs were not shown in the prior art and represented the points of novelty. Collezione asserts that it is not enough merely to introduce the patents, prosecution histories, and cited prior art and to file proposed findings of fact and conclusions of law. Moreover, Collezione argues that many of Bernhardt's proposed points of novelty are not ornamental, but functional, or

are clearly shown in the prior art and thus could not be considered points of novelty in any event. It contends that because Bernhardt did not present evidence to show which novel features are ornamental, the district court could not have determined what features are entitled to protection under Bernhardt's design patents. In response to the last point, Bernhardt argues that it was not required to identify which of its points of novelty were ornamental, because the trial court previously construed the design patent claims and identified as part of the claim construction what it deemed to be the ornamental features that comprise the patented design.

Both the parties and the district court have recognized that in determining infringement, "[t]he 'point of novelty' test is distinct from the 'ordinary observer' test and requires proof that the accused design appropriates the novelty which distinguishes the patented design from the prior art." Contessa, 282 F.3d at 1377. Both the ordinary observer and point of novelty tests are factual inquiries that are undertaken by the fact finder during the infringement stage of proceedings, after the claim has been construed by the court. See id. ("Comparison to the accused product includes two distinct tests, both of which must be satisfied in order to find infringement: (a) the 'ordinary observer' test, and (b) the 'point of novelty' test."). "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." OddzOn Prods., 122 F.3d at 1405. The district court determined the non-functional aspects of Bernhardt's design patents in the claim construction rulings, which Collezione has not contested. Thus, Bernhardt was not required as part of its infringement case to make any evidentiary showing of ornamental features.

04-1024                                   20

Bernhardt's appeal of its infringement case raises the question, "What evidence must be presented to prove infringement under the point of novelty test?" This court has remarked on proofs submitted in design patent infringement cases but has not unequivocally spoken to what minimum evidence a patentee must present to satisfy its burden under the point of novelty test. In Goodyear, this court upheld a trial court decision which relied on points of novelty drawn from the prosecution history in determining patent validity. Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1118-21 (Fed. Cir. 1998). The court noted in its discussion: "The points of novelty relate to differences from prior designs, and are usually determinable based on the prosecution history." Id. at 1118. In Litton, this court evaluated the points of novelty using solely the prior art and prosecution histories that were made of record by the parties. See Litton, 728 F.2d at 1441, 1444 (determining the points of novelty based on its prior examination of the prosecution history in determining the validity of the design patents). See also Catalina Lighting, 295 F.3d at 1287 (finding substantial evidence to support a jury verdict of infringement under the ordinary observer test, and noting, even though expert evidence was presented by the patentee, that the court discerned "no reason why its lamp alone [did] not provide substantial evidence of whether an ordinary observer would believe the patented lamp and the [accused] lamp to be substantially the same").

To establish the points of novelty in a design patent infringement action, we hold that the patentee must introduce into evidence, at a minimum, the design patent at issue, its prosecution history, and the relevant prior art references cited in the prosecution history; and must present, in some form, its contentions as to points of

novelty. The contentions may be made in any appropriate way, such as in proposed findings of fact. The fact finder generally will be able to determine the points of novelty that distinguish the design patent from the prior art by comparing the design patent with the cited prior art references, aided by any written statements of the applicant and examiner in the prosecution history. This standard is consistent with this court's previous decisions in Goodyear and Litton. A patentee may seek to present additional evidence, such as expert testimony, to assist the fact finder in understanding its contentions pertaining to the points of novelty, and in some cases presenting that evidence may be advisable. We hold only that when the points of novelty can be discerned from the patent, its prosecution history, the cited prior art, and the patentee's contentions, any additional evidence, such as expert testimony, is not necessary to establish the points of novelty.

The determination of the points of novelty in a design patent infringement case does not place an undue burden on the court. A determination of the differences between the patented design and the prior art is not especially different from the factual determinations that district courts routinely undertake on other issues, such as obviousness. See Litton, 728 F.2d at 1444 (basing its determination of the points of novelty largely on its earlier analysis of obviousness under 35 U.S.C. § 103). Of course, fact finders are not required to furrow through voluminous evidentiary submissions in order to discern a party's case. A party has an obligation to highlight its contentions to the district court in some form. In this case, Bernhardt did just that in its proposed findings of fact. The fact that Bernhardt declined to put on any testimony, expert or

otherwise, to explain its proposed points of novelty should not have been considered fatal to its case.

Here, it is undisputed that Bernhardt introduced into evidence the design patents at issue and their prosecution histories, including cited prior art. Bernhardt, 280 F. Supp. 2d at 499. Bernhardt's contentions as to the points of novelty were contained in its proposed findings of fact and conclusions of law. See id. at 490-93 (reciting Bernhardt's points of novelty for each patent except the '560 patent). This was a sufficient, albeit minimal, evidentiary basis on which the district court could have determined the points of novelty. The court was wrong not to examine Bernhardt's proofs on infringement and not to attempt such determination of the points of novelty as may have been evident therefrom.

The district court further found that Bernhardt failed to prove how Collezione appropriated its proposed points of novelty. Id. at 499. Bernhardt's proposed findings of fact and conclusions of law not only enumerated its contentions pertaining to the points of novelty, but also detailed how each of Collezione's accused furniture designs appropriated the enumerated points of novelty of each patent-in-suit. After expressing its disapproval that Bernhardt did not present an expert witness or other testimony addressing the points of novelty, the district court simply concluded without more that Bernhardt did not prove either the points of novelty or what points of novelty were appropriated by Collezione's accused designs. Id.

It was legal error for the district court to conclude that Bernhardt failed in its burden of establishing that Collezione appropriated the points of novelty of its design. The court apparently did not consider the evidence actually introduced—the design

patents, their prosecution histories, and the cited prior art—from which Bernhardt's proposed points of novelty and contentions regarding how Collezione's accused designs appropriated Bernhardt's proposed points of novelty might have been discerned. Because the district court incorrectly required Bernhardt to explain its points of novelty through the testimony of a witness, and concluded, based on the absence of such testimony, that Bernhardt failed to prove that Collezione had appropriated the novel ornamental features of the patents-in-suit, we vacate the district court's judgment of non-infringement, and remand the infringement issue to the district court for further proceedings consistent with this opinion.

<u>VACATED AND REMANDED</u>

III. COSTS

No costs.