**Ralph F. DURDIN and Richard J. Diotte, Plaintiffs,**

**v.**

**KURYAKYN HOLDINGS, INC., Defendant.**

**No. 06–C–39–C.**

United States District Court, W.D. Wisconsin.

July 26, 2006.

John M. Weyrauch, Dicke, Billig & Cza-ja, PLLC, Minneapolis, MN, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for infringement of a design patent. Plaintiffs Ralph Durdin and Richard J. Diotte are the owners of U.S. Patent Des. 432,470 (the '470 patent), which claims an ornamental design for a motorcycle brake or clutch lever in the shape of a naked human female body from the upper torso to the feet. Plaintiffs contend that defendant Kuryakyn Holdings, Inc. is infringing the '470 patent by designing, manufacturing and selling a substantially similar lever under the trade name "Silhouette Lever." Defendant has asserted a counterclaim that the '470 patent is invalid because the design lacks originality as required under 35 U.S.C. § 171. Jurisdiction is present. 28 U.S.C. § 1331, 1338.

Presently before the court is defendant's motion for summary judgment. In addition to its argument concerning lack of originality, defendant contends that it is entitled to dismissal of plaintiffs' claim because plaintiffs have not adduced evidence sufficient for a reasonable jury to return a verdict in their favor under the two tests used to analyze design infringement claims: the point of novelty test and the ordinary observer test. *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed.Cir.2002). For the reasons stated below, defendant's motion will be denied. In brief, there is evidence in the record from which a reasonable jury could conclude that defendant's design infringes the '470 patent under the ordinary observer and point of novelty tests. In addition, I conclude that plaintiff's design qualifies as original under § 171 because it was the product of the inventive process and is not a mere reproduction or imitation of the human form. Finally, defendant's request for correction of inventorship of the '470 patent will be denied because the record does not permit an evaluation of the contributions made by plaintiff Diotte to the patented design.

A brief note about the parties' proposed findings of fact is in order. Defendant submitted a set of proposed findings in support of its motion. Plaintiffs submitted a set of responses to defendant's proposals and a set of additional proposed findings. Defendant submitted a set of responses to plaintiff's additional findings. Neither side submitted a set of replies to the other side's responses. Therefore, any additional facts contained in the responses that are material have been treated as undisputed.

From the parties' proposed findings of fact, I find the following to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiff Ralph Durdin is a Canadian citizen residing in Ottawa, Ontario, Canada. Plaintiff Richard Diotte is a Canadian

citizen residing in Gloucester, Ontario, Canada. Plaintiffs are named as co-inventors of the design as shown in the '470 patent.

Defendant Kuryakyn Holdings, Inc. is a corporation formed under Wisconsin law with its principal place of business in Somerset, Wisconsin. Defendant sells after-market motorcycle accessories, including a brake and clutch lever which is sold under the name "Silhouette Lever."

B. *Background to the '470 Patent*

Plaintiff Durdin conceived of the design claimed in the '470 patent as early as 1994.

The first prototype was made in 1995. In the fall of that year, plaintiff Durdin showed plaintiff Diotte several maquettes, or small models, of a brake or clutch lever having a female form. Plaintiff Diotte showed the maquettes to three dealers and asked their opinions regarding their aesthetics. In addition, he assisted plaintiff Durdin with mechanical aspects of the design and in refining the design and putting it into its current form.

On July 7, 1998, plaintiffs filed U.S. Patent Application No. 29/090,584 ('584 application). The application contained the following ten figures.

FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

926

FIG. 9 FIG. 10

FIG. 7 FIG. 6 FIG. 8

Plaintiffs filed a "Combined Declaration and Power of Attorney" with the application in which each declared as follows: "I verily believe I am an original, first and joint inventor of the design entitled MOTORCYCLE BRAKE OR CLUTCH LEVER described and claimed in the attached specification." Plaintiffs declared further that they had "reviewed and understand the contents of the above-identified specification, including the claims as

amended by any amendment specifically referred to above."

The patent examiner identified two distinct groups of inventions in the '584 application: Group I directed to figures 1–5 and Group II directed to figures 6–10. He required plaintiffs to select one group of figures for examination. In addition, the examiner rejected the claim pursuant to the first paragraph of 35 U.S.C. § 112. He indicated that "the claimed invention is not described in such full, clear, concise and exact terms as to enable any person skilled in the art to make and use the same." In addition, he stated that it could not "be determined from Figs. 6–10 exactly what the claimed design is." The examiner requested clarification concerning what plaintiffs considered to be the claimed design: the simulated figure shown in figures 6–8 or the figure and portions of a handlebar and brake or clutch shown in figures 9 and 10.

The examiner rejected the drawings as well, stating that the appearance of the design was subject to conjecture because the contours of the simulated figure were informally and inconsistently rendered in figures 6–10. He suggested that plaintiffs submit formal drawings so he could understand their exact appearance and determine whether their appearance could be completed without the introduction of new matter.

Plaintiffs did not disclose any prior art to the Patent and Trademark Office before the '470 patent issued. The examiner cited the following design patents as prior art to the '584 application: U.S. Patent Nos. D 156,182; D 175,240; D282,736; D328,885; D328,886; and D411,727. The following items existed before plaintiffs filed their application and were not considered by the examiner: U.S. Patent No. Des. 117,567, entitled "Tobacco Smoking Pipe," which was issued on November 14, 1939; U.S. Patent No. Des. 337,454, entitled "Plumb Bob," which was issued on January 21, 1997; and a design of a nude female figure entitled "Speed Nymph" which was used as an automobile mascot during the 1930s and described in a printed publication more than one year before the invention of plaintiffs' design.

In response to the examiner's Office Action, plaintiffs filed an amendment that contained new written description. In addition, the amendment cancelled figures 1–10 and replaced them with four drawings. (The drawings appear in section C, below.) After the amendment was filed, the '584 application received a Notice of Allowability indicating that new formal drawings needed to be filed to correct the character of lines in the drawings. On July 24, 2000, plaintiffs submitted new formal drawings and paid the issue fee. The '470 patent issued on October 24, 2000.

## C. *The '470 Patent*

The '470 patent consists of one claim, "the ornamental design for a motorcycle break or clutch lever as shown and described," and the following four figures.

FIG.1

FIG.3

FIG.2

FIG.4

8

The lever shown in the figures is designed to fit Harley Davidson motorcycles. It has two functional features: the end that connects to the motorcycle and the lever's shape and size, which allow it to interface with a human hand.

D. *Silhouette Lever*

The following pictures show defendant's "Silhouette Lever."

## OPINION

■ A person may obtain a patent for a "new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171. The patent "protects the non-functional aspects of an ornamental design as shown in [the] patent." *KeyStone Retaining Wall Systems, Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed.Cir.1993). The purpose of extending patent protection to designs is "to give encouragement to the decorative arts." *Gorham Co. v. White*, 81 U.S. 511, 14 Wall. 511, 524, 20 L.Ed. 731 (1871). In this case, defendant argues that its Silhouette Lever does not infringe the '470 patent and that the '470 patent is invalid because it does not satisfy the originality requirement. Also, defendant argues that plaintiff Durdin is the only inventor of the '470 patent and asks the court to remove plaintiff Diotte as an inventor.

### A. *Construction*

■ "Determining whether a design patent claim has been infringed requires, first, as with utility patents, that the claim be properly construed to determine its meaning and scope." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed.Cir. 1995). Where, as in this case, "a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir.1997). In construing the patent, the court must translate the patent drawings into a written description that evokes the visual image of the claimed design. *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed.Cir.1996). The description must be specific enough to "evoke a visual image constant with the claimed design." Id. at 104. A description that merely rep-

resents the general design concept is too broad because "design patents are entitled to almost no scope beyond the precise content of the patent drawings." *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*, 393 F.3d 1378, 1383 (Fed.Cir.2005) (citing *Elmer*, 67 F.3d at 1577). Finally, a proper construction focuses on the overall visual impression of the design's ornamental features. *OddzOn Products*, 122 F.3d at 1405.

■ Plaintiffs proposed as a finding of fact that the court adopt the following construction: "The ornamental design for a motorcycle brake or clutch lever, as show[n] and described in the '470 patent." Plts.' Resp. to Def.'s PFOF, dkt. # 27, at ¶ 31. Defendant objected to this proposed finding on the ground that claim construction is a question of law, but they did not propose an alternative construction of the '470 patent. Defendant is correct that construction is a question of law but plaintiffs' proposed construction is not helpful because it does not put the claimed design into words. Accordingly, the court must attempt this translation on its own.

To begin, the parties agree that the '470 patent contains two functional features: the end of the lever that connects to the motorcycle and the lever's shape and size, which allow the rider to use his fingers to grasp and pull the lever towards the handlebar, where the palm of his hand rests. These features are not part of the claimed design. (Normally, features not claimed in a design are drawn in broken lines. *Door–Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed.Cir.2001). Although the connection end is not drawn in broken lines in the figures in the '470 patent, plaintiff conceded in his responses to defendant's proposed findings of fact that the end is functional and not part of the claimed design.) The patent is entitled "Motorcycle Brake or Clutch Lever" and the claim is represented by four drawings showing different views of the lever. Figure 1 shows a right side view of the lever. Figure 2 shows a view of the rear of the human form. Figure 3 depicts a frontal view and figure 4 shows a left side view of the lever. These drawings depict the following.

The design takes the shape of a naked human female without a head, neck or arms. The frontal view indicates that the end of the lever that connects to the motorcycle attaches to the design at the top of the upper torso, where the neck would normally attach to the shoulders. Two breasts extend out from the chest of the body. There is no definition of the tops of the breasts; they are smooth and do not have nipples. The outer line of the upper torso starts at the shoulders, curves inward and then outward to form the sides of the breasts. The breasts are connected to each other in the middle. The rear view shows the outer lines of the upper torso curving inward below the shoulders in the waist area and outward at the hips. Also, the rear view contains lines demarcating the two buttocks.

The frontal view shows the outer lines of the torso curving outward at the hips and then inward at the start of the legs. The stomach area contains a small half circle representing the navel. The legs extend from the hips down to the feet. There is no separation between them from the upper thigh to the foot. The outer lines of the legs narrow from the hips to the knees, curve outward at the calf and back inward at the heels. The left and right side views show the shape of a foot at the bottom of the legs. In addition, the left and right side views show a slight protrusion representing the knees. The frontal view shows the feet touching at the heels and the toes slightly separated. The rear view shows the legs touching from just under the buttocks down to the heels of the feet.

### B. Infringement

In determining whether an accused design infringes a design patent claim, a court must compare the patented design to the accused design. This comparison involves two tests, both of which must be satisfied in order to find infringement. The first is the "ordinary observer" test, which "requires comparison of the two designs from the viewpoint of the ordinary observer to determine whether the patented design as a whole is substantially the same as the accused design." *Lawman Armor Corp. v. Winner International, LLC*, 437 F.3d 1383, 1384 (Fed.Cir. 2006) (citation and quotations omitted). The second test is the "point of novelty" test, under which a court must determine whether "the accused design appropriates the novelty which distinguishes the patented design from the prior art." *Contessa*, 282 F.3d at 1377(citing *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed.Cir.1984)). Infringement of a design patent is a question of fact. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1287 (Fed.Cir.2002).

### 1. The ordinary observer test

The Supreme Court established the standard to guide examination of an accused device under the ordinary observer test more than one hundred years ago. In *Gorham*, 81 U.S. at 528, 81 U.S. 511, the Court held that "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." To apply the test correctly, the court must not break the patented design into its individual ornamental elements but instead should examine the patented design as a whole. *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed.Cir.

2006). Exact identity between the patented design and the accused design is not required. *Brooks*, 393 F.3d at 1383. Minor changes in a design may not alter its overall appearance. *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1117 (Fed.Cir.1998) (citing 35 U.S.C. § 289).

Defendant argues that substantial differences between the design of its Silhouette Lever and the design claimed in the '470 patent would preclude any reasonable juror from finding infringement under the ordinary observer test. Defendant tries to prove this by highlighting all of the ways in which the design of the Silhouette Lever differs from the '470 patent. For example, defendant notes that its design contains a head and neck, whereas the design claimed in the '470 patent does not. Also, the design in the '470 patent contains feet at the end of the body, whereas in defendant's design, the legs merge together at the end of the lever into a "bulbous end." Dft.'s Br., dkt. # 20, at 9. In addition, defendant argues that, in contrast to the patented design, its lever "has two distinct rounded breasts with separate circular demarcation between the two breasts." *Id.*

Although there are observable differences between the two designs, I disagree with defendants that these differences would preclude a reasonable jury from concluding that the designs are substantially similar. The Court of Appeals for the Federal Circuit has instructed district courts to focus on overall appearance rather than comparisons of ornamental features when considering the question of infringement. *Amini Innovation Corp.*, 439 F.3d at 1372 ("discounting of functional elements must not convert the overall infringement test to an element-by-element comparison"). In addition, the designs are to be compared through the eyes of an ordinary observer, not an lawyer who

inspects the designs critically to highlight each and every perceivable difference between them. Jurors, who are ordinary observers, could examine the designs and reasonably conclude that they are substantially similar. This would be sufficient to support a finding of infringement. *Catalina Lighting*, 295 F.3d at 1287 (jury could find substantial similarity by examining sample of accused design); *Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 821 (Fed.Cir.1992) ("Nothing in *Gorham* suggests that, in finding design patent infringement, a trier of fact may not as a matter of law rely exclusively or primarily on a visual comparison of the patented design ... and the accused device's design.").

Both designs take the shape of naked human females. Both designs contain some of the same ornamental features, such as breasts, a torso and two legs. These features bear substantially the same proportion to each other in each of the designs. A jury could conclude that the ornamental features on the Silhouette Lever could deceive an ordinary observer giving the attention to the designs of a purchaser of after-market motorcycle accessories and that a purchaser would buy the accused design thinking it to be the patented design. In light of the similarities between the designs, I conclude a genuine issue of material fact remains with respect to whether the Silhouette Lever is substantially similar to the design claimed in the '470 patent.

### 2. The "point of novelty" test

In *Winner International Corp. v. Wolo Manufacturing Corp.*, 905 F.2d 375, 376 (Fed.Cir.1990), overruled in part by *Cardinal Chem. Co. v. Morton International*, 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993), the court of appeals explained that "the purpose of the 'point of novelty' approach ... is to focus on those aspects of a design which render the design different

from prior art designs." "'New' designs frequently involve only relatively small changes in the shape, size, placement, or color of elements of old designs. It is those changes in and departures from the old designs that constitute the 'points of novelty' in the patented new design." *Lawman Armor Corp.*, 437 F.3d at 1385–86.

Defendant notes that plaintiffs identified only one point of novelty in discovery: "the ornamental design for a motorcycle brake or clutch lever, as shown and described in the '470 patent." Defendant argues that it is legal error to rely on the claimed overall design as the point of novelty. *Contessa*, 282 F.3d at 1377("it is legal error to merge the [ordinary observer and point of novelty] tests, for example by relying on the claimed overall design as the point of novelty"). Accordingly, defendant contends that plaintiffs have not satisfied their burden of producing evidence from which a jury could reasonably conclude that the design of the Silhouette Lever infringes the '470 patent under the point of novelty test.

Plaintiffs argue that the point of novelty test is to be resolved by the factfinder and that they are not obligated to list any of the '470 patent's points of novelty to survive summary judgment. *Black & Decker (U.S.) Inc. v. Pro–Tech Power Inc.*, 1998 WL 633636, 47 U.S.P.Q.2d 1843, 1847 (E.D.Va.1998). However, they have proposed several points of novelty in their proposed findings of fact, including (a) the combination of a stylized female form with a motorcycle lever; (b) the streamlined, featureless and elongated form; (c) the position, shape and angularity of form of the figures; and (d) the absence of arms and hands. Plts.' Resp. to Dft.'s PFOF and Additional PFOF, dkt. # 27, at ¶¶ 48–51.

■ I agree with defendant that (a) and (c) are not points of novelty. Alternative (a) is not a point of novelty because the motorcycle lever is not part of the design; it is the object to which plaintiffs have applied their patented design. Alternative (c) is not a point of novelty because the shape of the design is a functional aspect and therefore not protected by the patent. However, alternatives (b) and (d) might be points of novelty when compared to the prior art cited by the patent examiner. Moreover, in *Amini Innovation Corp.*, 439 F.3d at 1372, the court of appeals reversed a district court decision granting summary judgment of non-infringement even though the plaintiff had not "introduced sufficient evidence to establish with particularity its points of novelty." This suggests that plaintiffs do not have to present a definitive list of points of novelty at summary judgment. Accordingly, I conclude that plaintiffs have raised a genuine issue of material fact as to whether defendant's design "appropriates the novelty which distinguishes the patented design from the prior art." *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1383 (Fed.Cir.2004). Finally, I note that the court of appeals provided the following guidance concerning what a patentee must present in the way of evidence with respect to the point of novelty test:

> To establish the points of novelty in a design patent infringement action, we hold that the patentee must introduce into evidence, at a minimum, the design patent at issue, its prosecution history, and the relevant prior art references cited in the prosecution history; and must present, in some form, its contentions as to points of novelty. The contentions may be made in any appropriate way, such as in proposed findings of fact. The fact finder generally will be able to determine the points of novelty that distinguish the design patent from the prior art by comparing the design

patent with the cited prior art references, aided by any written statements of the applicant and examiner in the prosecution history. . . . A patentee may seek to present additional evidence, such as expert testimony, to assist the fact finder in understanding its contentions pertaining to the points of novelty, and in some cases presenting that evidence may be advisable. We hold only that when the points of novelty can be discerned from the patent, its prosecution history, the cited prior art, and the patentee's contentions, any additional evidence, such as expert testimony, is not necessary to establish the points of novelty.

*Id.* at 1384.

Because the record contains evidence from which a jury could find for plaintiffs on the question of infringement, I will address defendant's argument that plaintiffs' patent is invalid for lack of originality.

## C. *Originality*

■ Defendant argues that the '470 patent is invalid because the patented design is not original. 35 U.S.C. § 171 (patent may be obtained for "any new, *original* and ornamental design for an article of manufacture") (emphasis added). Defendant contends that the non-functional aspect of plaintiffs' design is "an ordinary human female form from the shoulders down" which contains "no unusual features that depart from a normal female body" and therefore "merely imitates the reality of the human female form." Dft.'s Br., dkt. # 20, at 5. It cites two decisions involving the same inventor, *In re Smith*, 22 C.C.P.A. 1201, 77 F.2d 513 (Cust. & Pat. App.1935) and *In re Smith*, 22 C.C.P.A. 1209, 77 F.2d 514 (Cust. & Pat.App.1935), for the proposition that any person has the right to apply a natural form, such as the human female form, to an object. Plain-

tiffs rely on the presumption of validity that adheres to an issued patent under 35 U.S.C. § 282 and argue that a design of a natural, human form can be patented. For support, they cite a recent case, *Superior Merchandise Co., Inc. v. M.G.I. Wholesale, Inc.*, 1999 WL 977365, 52 U.S.P.Q.2d 1935 (E.D.La.1999). I conclude that plaintiffs have the better of the argument.

The inventor in the *Smith* cases brought two applications for design patents. One was for "the figure of a naked baby standing, holding its nursing bottle in its right hand, and applying a watch to its ear with its left hand," to be used on a doll. *Smith*, 77 F.2d at 513. The court remarked that the design "is a representation of a normal child of [one year's] age, with no unusual features not found in the ordinary child." *Id.* The court upheld denial of the application because Smith had not invented anything. He had merely taken "a natural form, in a natural pose, and utilize[d] it as his design." *Id.* In contrast to Smith's proposed design, the court stated that if "the selection and adaptation of an existing form is more than the exercise of imitative faculty, and the result is in effect a new creation, the design may be patentable." *Id.*

Smith's other application was for
a naked baby doll which has the natural or life-like characteristics and the form and posture of a baby. The legs are drawn up toward the trunk and one foot overlaps the other, the feet pointing slightly downward.... One hand rests upon the abdomen and the other on a knee. The head is turned slightly to one side and there is a pleasing, smiling, baby expression on the face. While the postures and features of the doll may not in all respects be those of a living baby, they do not fall far short of being such.

*Smith*, 77 F.2d at 514. The court upheld rejection of the application, stating that "no invention is shown in embodying the natural form, features, expressions and attitudes of a baby, and in the design at bar there is no such departure from the natural form as to render the design sufficiently distinctive in this respect to merit allowance of the claim." *Id.*

█ Originality and the exercise of inventive faculty are required for a design patent to be valid. *Smith v. Whitman Saddle Co.*, 148 U.S. 674, 13 S.Ct. 768, 37 L.Ed. 606 (1893). Plaintiffs' design is distinguishable from Smith's designs because it is the product of inventive faculty. It departs from the natural female form by omitting the head, neck and arms. Also, the design is applied to a motorcycle part, not a doll or other human-shaped object. Plaintiffs' design is a product of the creative process; it is more than "mere imitation or simulation" of the human female form. *Smith*, 77 F.2d at 514. Accordingly, defendant is not entitled to summary judgment on the ground that plaintiffs' design is invalid for lack of originality under § 171.

### D. *Inventorship*

█ Defendant asks the court to correct the inventorship of the '470 patent by removing plaintiff Diotte as an inventor. "An inventor under the patent laws is the 'person or persons who conceived the patented invention.'" *Hoop v. Hoop*, 279 F.3d 1004, 1007 (Fed.Cir.2002) (quoting *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1352 (Fed.Cir.1998)). Conception, or the formation of a definite and permanent idea of the complete invention, is the touchstone of inventorship; therefore, a person who assists the inventor after conception of the invention is not a joint inventor. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed.Cir.

1998). Each inventor must contribute to the conception of the invention. *Id.* The issuance of a patent creates a presumption of inventorship. *Board of Education v. American Bioscience, Inc.,* 333 F.3d 1330, 1337 (Fed.Cir.2003). "An assertion of incorrect inventorship must be based on facts proved by clear and convincing, corroborated evidence." *C.R. Bard,* 157 F.3d at 1352. Inventorship is a question of law. *Board of Education,* 333 F.3d at 1337.

 The undisputed facts indicate that plaintiff Durdin conceived of the design claimed in the '470 patent as early as 1994. Plaintiff Diotte saw models of the design in the fall of 1995 and assisted plaintiff Durdin in the mechanical aspects of the design and in refining the design and putting the design into its current form. On these facts, I cannot determine as a matter of law that plaintiff Diotte's assistance did not qualify him as an inventor. "The ultimate test for design-patent inventorship, like the test for anticipation and infringement, is whether the second asserted invention is substantially similar to the first." *Hoop,* 279 F.3d at 1007. Accordingly, to qualify as an inventor, the assistance plaintiff Diotte provided must have resulted in a design that was not substantially similar to the one plaintiff Durdin showed him. *See also Sunbeam Products, Inc. v. Wing Shing Products (BVI) Ltd.,* 311 B.R. 378, 388 (S.D.N.Y. 2004) ("if the improved design could not be found to infringe the original design, the person responsible for the alterations is a joint inventor because their improvements were significant"). Because there are no facts concerning the specific contributions plaintiff Durdin made to the design, I conclude that defendant has not carried its burden of proving by clear and convincing evidence that plaintiff Diotte does not qualify as an inventor of the design disclosed in the '470 patent.

## ORDER

IT IS ORDERED that defendant Kuryakyn Holding's motion for summary judgment is DENIED.